## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| KAREN ROBINSON & JONATHON ROBINSON, | |
| Plaintiffs, | No. 07-cv-5603 |
| v. | Judge Holderman |
| MCNEIL CONSUMER HEALTHCARE, a Division of MCNEIL-PPC, INC.; and JOHNSON & JOHNSON, | Magistrate Judge Cox |
| Defendants. | |

## PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, MOTION TO AMEND THE JUDGMENT, AND MOTION FOR NEW TRIAL

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..............................................................................................iii

INTRODUCTION ..........................................................................................................1

ARGUMENTS & AUTHORITIES ...................................................................................2

I.    PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON
MCNEIL'S CONTRIBUTORY NEGLIGENCE DEFENSE....................................................2

    A.    Standard for Granting Judgment as a Matter of Law ....................................................2

    B.    Defendants Must Prove Both Elements of Contributory Negligence by
a Preponderance of the Evidence ...................................................................................4

    C.    There Is Not a Legally Sufficient Evidentiary Basis for a Finding That
Any Negligence of Plaintiff Karen Robinson Proximately Caused Her
Injuries ........................................................................................................................5

        1.    There is No Evidence That Ms. Robinson's Conduct Prior to
Taking Children's Motrin Caused Her TEN ..........................................................7

        2.    There is No Evidence That Not Stopping the Product Sooner
Caused Ms. Robinson's TEN ...............................................................................8

            a.    There is No Medical Evidence That Ms. Robinson's TEN
Would Not Have Developed But For the Second and Third
Doses of Children's Motrin.............................................................................8

            b.    McNeil Has Cited No Credible Evidence That Ms. Robinson's
TEN Would Not Have Developed But For the Second and Third
Doses of Children's Motrin...........................................................................11

            c.    McNeil's Argument is Relevant Only to Mitigation of Damages,
Not Causation ..............................................................................................13

    D.    There Is Not a Legally Sufficient Evidentiary Basis For a Finding That
Plaintiff Karen Robinson Was Negligent ....................................................................14

        1.    Ms. Robinson's Actions in Taking Child-Size Doses of Children's
Motrin is Insufficient to Show Contributory Negligence ....................................16

        2.    The Failure to Read an Inadequate Warning Is Not Evidence
of Contributory Negligence .................................................................................17

       3.     Ms. Robinson Did Not Ignore the Symptoms of an Allergic Reaction ..............18

II.      THE JUDGMENT SHOULD BE AMENDED UNDER RULE 59(E) TO
         RENDER JUDGMENT FOR PLAINTIFF ON HER BREACH OF IMPLIED
         WARRANT CLAIM AGAINST MCNEIL...........................................................................19

III.     IN THE ALTERNATIVE, PLAINTIFF SHOULD BE GRANTED A NEW TRIAL ...........23

CONCLUSION.....................................................................................................................26

CERTIFICATE OF SERVICE ............................................................................................27

# TABLE OF AUTHORITIES

**CASE**                                                                                                          **PAGE**

*Alexander v. Mount Sinai Hosp. Med. Ctr.,*
    434 F.3d 889 (7th Cir. 2007) ...................................................................................3

*Bachenski v. Malnati,*
    11 F.3d 1371 (7th Cir. 1993) .................................................................................3

*Bly v. Otis Elevator Co.,*
    713 F.2d 1040 n.6 (4th Cir. 1983) ........................................................................19

*Byrd v. Illinois Dep't. of Pub. Health,*
    423 F.3d 696 (7th Cir.2005) ...................................................................................25

*Caletz v. Blackmon,*
    479 F. Supp. 2d 946 (N.D. Ill. 2007) ......................................................................3

*Cashen v. Integrated Portfolio Mgmt., Inc.,*
    No. 08-CV-268, 2008 WL 4976210, at *3 n.5 (N.D. Ill. Nov. 20, 2008) .............20

*Checkers Eight Ltd. P'ship v. Hawkins,*
    241 F.3d 558 (7th Cir. 2001) ...............................................................................20

*Chesapeake & O. R.R. Co. v. Butler,*
    20 S.E.2d 516 (Va. 1942).........................................................................................6

*Davey v. Lockheed Martin Corp.,*
    301 F.3d 1204 (10th Cir. 2002) ............................................................................22

*Delagrange v. McKinley,*
    820 F.2d 229 (7th Cir. 1987) ...........................................................................21,22

*Dorr-Oliver Inc. v. Fluid-Quip., Inc.,*
    1994 WL 13657, at *2-*3 (N.D. Ill. Jan. 6, 1994)................................................22

*Eiss v. Lillis,*
    357 S.E.2d 539 (Va. 1987)........................................................................................4

*Fultz v. Delhaize Am., Inc.,*
    677 S.E.2d 272 (Va. 2009)..................................................................................14,15

*FutureSource LLC v. Reuters, Ltd.,*
    312 F.3d 281 (7th Cir. 2002) ...............................................................................20

**CASE**                                                                                     **PAGE**

*Gann v. Oltesvig,*
    491 F. Supp. 2d 771 (N.D. Ill. 2007) ......................................................................3

*Gravitt v. Ward,*
    518 S.E.2d 631 (Va. 1999)..................................................................................4,5

*Groom v. Days Inn of Am., Inc.,*
    62 F.3d 204 (7th Cir. 1995) ..................................................................................3

*Hall v. Forest River, Inc.,*
    536 F.3d 615 (7th Cir. 2008) ..............................................................................3,4

*Hans v. Matrixx Initiatives, Inc.,*
    No. 3:04-CV-540, WL 2007 WL 2668594, at *3 (W.D. Ky. Sept. 6, 2007)...........9

*Harrington v. City of Chicago,*
    433 F.3d 542 (7th Cir. 2006). .............................................................................19

*Hartwell v. Danek Med., Inc.,*
    47 F.Supp.2d 703 (W.D. Va.1999) ........................................................................9

*Helena Assocs., LLC v. EFCO Corp.,*
    2009 WL 2355811, at *3 (S.D.N.Y. July 29, 2009) .............................................21

*Jeld-Wen, Inc. v. Gamble,*
    501 S.E.2d 393 (Va. 1998)...................................................................................19

*Jenkins v. Charleston Gen. Hosp. & Training School,*
    110 S.E. 560 (1922) ............................................................................................14

*Jones v. Ford Motor Co.,*
    559 S.E.2d 592 (Va. 2002)...................................................................................19

*Justice v. Big Bee Steel and Tank Co.,*
    2000 WL 33146949, at *1 (Cir. Ct. Va. Aug. 15, 2000) .....................................6,8

*Karim v. Grover,*
    369 S.E.2d 185 (1988) ........................................................................................6,8

*Landes Const. Co., Inc. v. Royal Bank of Canada,*
    833 F.2d 1365 (9th Cir. 1987) .............................................................................23

**CASE**                                                                                                          **PAGE**

*Lawrence v. Wirth,*
    309 S.E.2d 315 (Va. 1983)...................................................................................4,13

*Mayer v. Gary Ptners. & Co.,*
    29 F. 3d 330 (7th Cir. 1994) .................................................................................3

*McCauley v. Purdue Pharma L.P.,*
    331 F. Supp. 2d 449 (W.D. Va. 2004) ....................................................................9

*McNabola v. Chicago Transit Authority,*
    10 F.3d 501 (7th Cir.1993) ....................................................................................23

*Moses v. Sw. Va. Transit Mgmt. Co.,*
    643 S.E.2d 156 (Va. 2007)..................................................................................6,15

*Murray v. Chicago Transit Auth.,*
    252 F.3d 880 (7th Cir. 2001) ................................................................................3

*Petersen v. Elmhurst Anesthesiologists, P.C.,*
    No. 93-C-1468, 1993 WL 400286, at *5 (N.D. Ill. Oct. 6, 1993) ........................20

*Pieczynski v. Cerda,*
    1988 WL 67646, at *1 (N.D. Ill. June 20, 1988)..................................................23

*Ponirakis v. Choi,*
    546 S.E.2d 707 (Va. 2001)..................................................................................4,15

*Purtell v. Mason,*
    2006 WL 2037354, at *4 (N.D. Ill. July 18, 2006)...............................................25

*Reeves v. Sanderson Plumbing Prods., Inc.,*
    530 U.S. 133 (2000)................................................................................................3

*Reich v. Minnicus,*
    886 F. Supp. 664 (N.D. Ind. 1993) .......................................................................23

*Rosby Corp. v. Stoughton Trailers, Inc.,*
    No. 95 C 511, 2004 WL 1462244, at *2 (N.D. Ill. June 28, 2004).......................21

*Rose v. Jaques,*
    597 S.E.2d 64 (Va. 2004)....................................................................................4,5

# TABLE OF AUTHORITIES (CONT'D…)

**CASE**                                                                                                          **PAGE**

*Sachnoff Weaver & Rubenstein, Ltd. v. McKinnon*,
    1991 WL 49639, at *1 (N.D. Ill. Apr. 3, 1991) ...................................................23

*Sadler v. Lynch,*
    192 Va. 344 (1951) ...........................................................................1,17,25

*Sawyer v. Comerci,*
    563 S.E.2d 748 (Va. 2002)...................................................................4,5,13

*Simpson v. Lambert Bros. Div.—Vulcan Materials Co.*,
    362 F.2d 731 (4th Cir. 1966) ...................................................................6

*Smith v. Rowe*,
    761 F.2d 360 (7th Cir. 1985) .................................................................21

*Spanish Action Comm. of Chicago v. City of Chicago*,
    766 F.2d 315 (7th Cir. 1985) .................................................................23

*Spruill v. Boyle-Midway, Inc.*,
    308 F.2d 79 (4th Cir. 1962) ............................................................1,17,25

*Stanback v. Parke, Davis & Co.*,
    657 F.2d 642 n.5 (4th Cir. 1981) ........................................................17,25

*Taylor v. Denny's, Inc.,*
    422 F. Supp. 2d 928 (N.D. Ill. 2006) ........................................................3

*Thomas v. Settle,*
    439 S.E.2d 360 (Va. 1994)......................................................................6

*Tibbs v. Fla.*,
    457 U.S. 31 n.11 (1982)........................................................................23

*United States v. Lincoln*,
    630 F.2d 1313 (8th Cir. 1980) ...............................................................23

*Walter v. Bruhn,*
    40 Fed. Appx. 244 (7th Cir. 2002).............................................................3

*Willis v. Marion County Auditors' Office*,
    118 F.3d 542 (7th Cir. 1997) ..................................................................4

# **TABLE OF AUTHORITIES (CONT'D…)**

**CASE**                                                                                    **PAGE**

*Winger v. Winger*,
     82 F.3d 140 (7th Cir. 1996) ...................................................................................23


**Other**                                                                                   **PAGE**

*Moore's Federal Practice* ¶ 16.20 at 16-19 to 16-80 (2d ed. 1985) ..............................21


**Rules**                                                                                   **PAGE**

FED. R. CIV. P. 50(b) ...........................................................................................2

FED. R. EVID. 16(d)..............................................................................................20

FED. R. EVID. 16(e)..............................................................................................21

<u>**PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW,**</u>
<u>**MOTION TO AMEND THE JUDGMENT, AND MOTION FOR NEW TRIAL**</u>

Pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure, Plaintiff Karen Robinson moves the Court for judgment as a matter of law against Defendant McNeil Consumer Healthcare ("McNeil") on the issue of contributory negligence, for an amendment of the judgment to reflect that that the jury found against McNeil on the elements of Plaintiff's breach of implied warranty claim, and in the alternative, for a new trial against McNeil under Rule 59, and would respectfully show the Court as follows:

## INTRODUCTION

Plaintiff is entitled to judgment as a matter of law on McNeil's contributory negligence defense because the trial record is devoid of evidence that Ms. Robinson failed to act as a reasonable person would for her own safety or that any possible negligence on her part proximately caused her Toxic Epidermal Necrolysis (TEN). McNeil not only denied that it was blaming Ms. Robinson for causing her own injuries, it failed to produce sufficient evidence to meet its burden of affirmatively demonstrating both elements of contributory negligence. Particularly with regard to the proximate cause element, there is not a single piece of medical evidence or witness testimony that would lead a reasonable juror to conclude that Ms. Robinson's TEN was caused by her failure to re-read the warnings on the bottle of Children's Motrin or by her failure to stop taking the drug after she developed a rash and other initial symptoms of TEN. Moreover, under Virginia law, failure to read an inadequate warning is not evidence of contributory negligence. *See Spruill v. Boyle-Midway, Inc.*, 308 F.2d 79, 86-87 (4th Cir. 1962); *Sadler v. Lynch*, 192 Va. 344, 347 (1951). The jury's contributory negligence finding is not supported by the evidence in this case and should be set aside under Rule 50(a). Judgment should therefore be rendered for Plaintiff.

Plaintiff also moves for an amendment of the judgment under Rule 59(e) to reflect that the jury found against McNeil on the elements of Plaintiff's breach of implied warranty claim, which are the same as the elements of Plaintiff's negligence claim. Because contributory negligence is not a defense to breach of implied warranty, the judgment should also be amended to render judgment for Plaintiff.

In the alternative, Plaintiff seeks a new trial against McNeil under Rule 59(a). A new trial is warranted because the jury's contributory negligence finding is against the great weight of the evidence. A new trial is also necessary to correct the errors that contributed to the jury's unsupported contributory negligence finding, including the failure to instruct the jury that when the warning is inadequate the manufacturer cannot rely on a defense that the user failed to read or follow the warnings on the product. It was also error not to instruct the jury on Plaintiff's breach of implied warranty claim under Virginia law, which has the same elements as negligence under Virginia law but is not subject to a contributory negligence defense. These errors resulted in an unfair trial. If relief is not granted under Rule 50 or Rule 59(e), Plaintiff respectfully requests a new trial.

**ARGUMENT AND AUTHORITIES**

**I.      PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON MCNEIL'S CONTRIBUTORY NEGLIGENCE DEFENSE.**

     **A.      Standard for Granting Judgment as a Matter of Law.**

Under Rule 50(b) of the Federal Rules of Civil Procedure, Plaintiff may renew her motion for judgment as a matter of law after entry of judgment. FED. R. CIV. P. 50(b). Although there is conflicting case law in the Seventh Circuit and the Northern District of Illinois regarding whether federal or state law standards govern the determination of a motion for judgment as a matter of law, the prevailing view is that federal law governs this issue. *See*

*Walter v. Bruhn*, 40 Fed. Appx. 244, 246 (7th Cir. 2002); *Mayer v. Gary Ptners. & Co.*, 29 F.3d 330, 335 (7th Cir. 1994); *Groom v. Days Inn of Am., Inc.*, 62 F.3d 204, 207 (7th Cir. 1995); *Caletz v. Blackmon*, 476 F. Supp. 2d 946, 951 (N.D. Ill. 2007); *Taylor v. Denny's, Inc.*, 422 F. Supp. 2d 928, 929 (N.D. Ill. 2006); *but see Bachenski v. Malnati*, 11 F.3d 1371, 1375 n.3 (7th Cir. 1993); *Gann v. Oltesvig*, 491 F. Supp. 2d 771, 773 (N.D. Ill. 2007). The Seventh Circuit has analyzed the practice of applying state law standards to mid-trial and post-trial motions regarding the sufficiency of the evidence in diversity cases and concluded that this makes little sense in light of the fact that federal law has always governed sufficiency of the evidence review at the summary judgment stage, as well as other dispositive motions such as motions for new trial. *See Mayer*, 29 F.3d at 334. Therefore, the Seventh Circuit rule is that "[i]n diversity cases, federal law determines when a party deserves judgment as a matter of law, whether pre-trial, mid-trial, post-trial, or on appeal." *Groom*, 62 F.3d at 207 (citing *Mayer*, 29 F.3d at 335); *see also Walter*, 40 Fed. Appx. at 246 (noting that this Circuit used to apply state law standards to motions for judgment as a matter of law but now applies the federal "reasonable person" standard).

"Under Rule 50, a court should grant judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Alexander v. Mount Sinai Hosp. Med. Ctr.*, 434 F.3d 889, 902 (7th Cir. 2007). In evaluating a motion for judgment as a matter of law, the entire record should be considered, with all inferences drawn in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 887 (7th Cir. 2001). The Court must consider whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the nonmoving party. *Hall v. Forest River, Inc.*, 536

F.3d 615, 619 (7th Cir. 2008).  A mere scintilla of evidence is not enough to avoid judgment as a matter of law.  *Id.*; *Willis v. Marion County Auditors' Office*, 118 F.3d 542, 545 (7th Cir. 1997).

**B.      Defendants Must Prove Both Elements of Contributory Negligence by a Preponderance of the Evidence.**

Given that the defense of contributory negligence operates to completely bar a plaintiff's recovery under Virginia law, defendants must meet an exacting standard in order to prove this defense.  "A defendant asserting contributory negligence as a defense bears the burden of proving, by the greater weight of the evidence, that the plaintiff was negligent and that her negligence was the proximate cause of the injury." *Rose v. Jaques*, 597 S.E.2d 64, 71 (Va. 2004).  The defendant must also show that the plaintiff's negligence is concurrent with the defendant's negligence.  *See Ponirakis v. Choi*, 546 S.E.2d 707, 711 (Va. 2001); *Eiss v. Lillis*, 357 S.E.2d 539, 543 (Va. 1987).  A defendant can only demonstrate a *prima facie* case of contributory negligence by producing more than a scintilla of evidence on each element of this defense.  *Rose*, 597 S.E.2d at 72.  A jury instruction should not be given on contributory negligence unless the defendant has met its burden of producing more than a scintilla of evidence on each element.  *Id.* at 71; *Sawyer v. Comerci*, 563 S.E.2d 748, 753 (Va. 2002).

The Virginia Supreme Court routinely sets aside contributory negligence findings when there is insufficient evidence to submit the issue to the jury or to support the jury's verdict.  *See Sawyer*, 563 S.E.2d at 753; *Ponirakis*, 546 S.E.2d at 711-12; *Gravitt v. Ward*, 518 S.E.2d 631, 634-35 (Va. 1999); *Eiss*, 357 S.E.2d at 544; *Lawrence v. Wirth*, 309 S.E.2d 315, 317-18 (Va. 1983); *see also Rose*, 597 S.E.2d at 72 (upholding trial court's refusal to instruct the jury on contributory negligence when the defendant had not produced more than a scintilla of evidence on each element).  For example, in *Sawyer v. Comerci*, the Virginia Supreme Court held that it was error to give a contributory negligence instruction in a medical malpractice case because it

determined that the jury should not have been permitted to infer that a layman can be guilty of contributory negligence for leaving an emergency room against the advice of a physician. *Sawyer*, 563 S.E.2d at 753. Similarly, in *Gravitt v. Ward*, the Virginia Supreme Court held that there was insufficient evidence for the jury to infer that the plaintiff had been contributorily negligent in failing to inform her doctor of a lump in her left breast when the only evidence of such failure was the absence of a note in the doctor's record. *Gravitt*, 518 S.E.2d at 634-35. The court applied similar reasoning in a car accident case, finding that there was no actual evidence that the plaintiff had failed to apply her brakes to avoid the collision and that "[a] jury finding that [the plaintiff] was negligent would have required unreasonable speculation beyond the evidence presented at trial." *Rose*, 597 S.E.2d at 72.

This Court should similarly set aside the jury's contributory negligence finding in this case. As outlined below, there was not a legally sufficient evidentiary basis for the jury to find either that Ms. Robinson failed to act with ordinary care for her safety or that any negligence on her part was the direct and proximate cause of her TEN. As Virginia case law demonstrates, weak or speculative evidence of contributory negligence will not support a contributory negligence instruction or finding. This case falls into that category. The extraordinary circumstances presented by this case warrant setting aside the jury's contributory negligence finding and granting judgment as a matter of law on this defense.

C. **There Is Not a Legally Sufficient Evidentiary Basis for a Finding That Any Negligence of Plaintiff Karen Robinson Proximately Caused Her Injuries.**

Because there is clearly no evidence that Ms. Robinson's conduct proximately caused her injuries, Plaintiff will address this element first. Proximate causation is an essential element of contributory negligence and is every bit as important as the negligence element. "Proof of a plaintiff's negligence alone is insufficient to establish contributory negligence, even if the

plaintiff is negligent per se." *Moses v. Sw. Va. Transit Mgmt. Co.*, 643 S.E.2d 156, 160 (Va. 2007). "When a defendant relies upon contributory negligence as a defense, he has the burden of proving by the greater weight of the evidence not only that the plaintiff was negligent, but also 'that his negligence was a proximate cause, a direct, efficient contributing cause of the accident.'" *Karim v. Grover*, 369 S.E.2d 185, 186 (1988) (citations omitted); *accord Justice v. Big Bee Steel and Tank Co.*, No. 22139, 2000 WL 33146949, at *1 (Cir. Ct. Va. Aug. 15, 2000).

Under Virginia law, proximate cause is defined as "that act or omission which, in the natural and continuous sequence, unbroken by any efficient intervening cause, produces the event, and **without which the event would not have occurred**." *Thomas v. Settle*, 439 S.E.2d 360, 363 (Va. 1994) (emphasis added). This is a demanding causation standard under which the defendant must show that "but for such negligence or want of ordinary care and caution on [the plaintiff's] part the misfortune would not have happened." *Chesapeake & O. R.R. Co. v. Butler*, 20 S.E.2d 516, 518 (Va. 1942). Thus, "negligence on the part of a plaintiff does not bar his recovery if it contributes only slightly or trivially to his injury." *Simpson v. Lambert Bros. Div.—Vulcan Materials Co.*, 362 F.2d 731, 734 (4th Cir. 1966). Moreover, "when the negligence of a defendant is the proximate cause of the [injury] and that of the plaintiff the remote cause, the plaintiff may recover notwithstanding the plaintiff's negligence." *Thomas*, 439 S.E.2d at 363. While the proximate cause is that which directly produces the injury, a remote cause is one that only may have antecedently contributed to it. *Id.*

In prior briefing, McNeil has taken the position that "Plaintiff failed to act reasonably when she decided to take Children's Motrin without reading its warnings, and continued taking the drug without consulting its warnings despite the appearance of an allergic reaction and new symptoms." Defendants' Opposition to Plaintiff's Motion for Judgment as a Matter of Law

(Docket Entry No. 412) at 2. However, there is insufficient evidence that, but for Ms. Robinson's failure to re-read the warning label or stop the product sooner, her TEN would not have occurred. The record is completely devoid of any evidence that Ms. Robinson's alleged negligence proximately caused her TEN.

### 1. There is No Evidence That Ms. Robinson's Conduct Prior to Taking Children's Motrin Caused Her TEN.

First, McNeil cannot point to any credible evidence that Ms. Robinson's decision "to take Children's Motrin without reading its warnings" caused her TEN. Factually that is not even a correct statement because even defense counsel conceded at trial that Ms. Robinson read the warning label before giving Children's Motrin to her son Luke and acted reasonably in deciding to give this medicine to her son. Trial Tr. Vol. VI at 1321:20-21, 1322:2-5. It is beyond dispute that deciding to take an over-the-counter drug after reading the warning label is not negligent conduct.

Moreover, the failure to re-read the warning label did not cause Ms. Robinson's TEN. There were no warnings on the product indicating that Ms. Robinson should not have taken Children's Motrin initially. Any warnings about stopping the product if an allergic reaction occurs or new symptoms appear would not have indicated to Ms. Robinson that should not have taken the product in the first place. The evidence is that Ms. Robinson developed a rash after the first dose of Children's Motrin. Trial Tr. Vol. 3 at 540:18-542:21, 549:14-21. At that point, the TEN disease process had already started. Thus, even if Ms. Robinson had re-read the warnings thoroughly, that would not have prevented her TEN from developing. McNeil did not and cannot show that but for Ms. Robinson's failure to re-read the warning label before taking that first dose, her injuries would not have occurred.

In closing arguments, McNeil did not even try to argue that Ms. Robinson's decision "to take Children's Motrin without reading its warnings" caused her injuries. Rather, McNeil argued that her failure to read the warnings means that a better warning would not have made a difference because she would not have read it anyway. *Id.* at 1320:19-1321:3, 1325:6-19, 1327:9-14. That is an argument relating to whether Plaintiff met her proximate cause burden, not a contributory negligence argument. The jury cannot base a contributory negligence finding on evidence that Ms. Robinson did not re-read the warning label before taking the initial dose of Children's Motrin when there is no evidence that her TEN could have been prevented by the contents of that warning label.

        **2.**        **There is No Evidence That Not Stopping the Product Sooner Caused Ms. Robinson's TEN.**

It is evident that McNeil's real contributory negligence argument is that Ms. Robinson "continued taking the drug without consulting its warnings despite the appearance of an allergic reaction and new symptoms." Docket Entry 412 at 2. Even if Ms. Robinson was somehow negligent in not stopping the product sooner, there is no credible evidence that this failure was the proximate cause of Ms. Robinson's TEN. Not a single witness has testified to that, and McNeil has no credible scientific evidence of causation. Viewed in the light most favorable to McNeil, the evidence only suggests that Ms. Robinson might have been able to mitigate the severity of her TEN if she had stopped taking the product sooner.

        **a.**        **There is No Medical Evidence That Ms. Robinson's TEN Would Not Have Developed But For the Second and Third Doses of Children's Motrin.**

McNeil of course had the burden of establishing that Ms. Robinson's negligent conduct was the direct and proximate cause of her TEN. *Karim*, 369 S.E.2d at 186 (1988); *Justice*, 2000 WL 33146949, at *1. In product liability actions, causation must be proven through expert

testimony. *See McCauley v. Purdue Pharma L.P.*, 331 F. Supp. 2d 449, 464 (W.D. Va. 2004); (applying Virginia law); *Hartwell v. Danek Med., Inc.*, 47 F.Supp.2d 703, 707 (W.D. Va.1999) (applying Virginia law).[1] Yet McNeil did not produce any testimony from any medical or scientific expert that Ms. Robinson's TEN would not have developed but for the second and third doses of Children's Motrin.

A brief examination of the expert testimony at trial demonstrates that not a single expert testified that the second and third doses were a but-for cause of Ms. Robinson's TEN:

- Dr. Robert Nelson, a pharmacoepidemiologist and the first expert to testify, spoke about general causation only. Trial Tr. Vol. 2 at 65:17-66:14. Dr. Nelson discussed over a dozen studies regarding the causal association between ibuprofen and SJS/TEN, *id.* at 85:3-122:14, and testified that to a reasonable degree of scientific certainty ibuprofen is a cause of TEN. *Id.* at 122:15-18. He never testified that Ms. Robinson's TEN would not have developed without the second and third doses of Children's Motrin, and McNeil did not ask him about that during cross-examination.

- Dr. Randall Tackett is a pharmacologist and toxicologist who testified that, in his opinion, ibuprofen is a cause of TEN based on an established pharmacological mechanism for causation, a close temporal relationship between ingestion of the drug and the onset of symptoms, and the causal association that has been observed in the scientific literature. *Id.* at 210:7-25, 221:15-227:8, 241:20-243:18, 245:10-257:5. He further testified that from a pharmacological standpoint, Ms. Robinson's TEN was consistent

---

[1] Federal law similarly require expert testimony to establish causation, particularly in pharmaceutical cases. *See, e.g., Hans v. Matrixx Initiatives, Inc.*, No. 3:04-CV-540, WL 2007 WL 2668594, at *3 (W.D. Ky. Sept. 6, 2007) (observing that federal "[c]ourts have held that personal injury cases arising out of exposure to drugs involve complex questions of medical causation beyond the understanding of a lay person, and these require expert testimony on causation issues").

with an ibuprofen-induced cause. *Id.* at 258:18-259:19. Dr. Tackett never testified that Ms. Robinson's TEN would not have developed without the second and third doses of Children's Motrin, and McNeil did not ask him about that during cross-examination.

- Dr. Roger Salisbury is a burn surgeon with extensive experience treating patients with SJS/TEN. Trial Tr. Vol. III at 382:6-383:20, 388:12-388:25. He testified about his treatment of patients with SJS/TEN, as well as his study of drug-induced cases of SJS/TEN that found ibuprofen to be a substantial cause of SJS/TEN. *Id.* at 392:21-410:18. In Dr. Salisbury's opinion, Ms. Robinson's TEN was caused by ibuprofen. *Id.* at 410:19-416:2. Dr. Salisbury never testified that Ms. Robinson's TEN would not have developed without the second and third doses of Children's Motrin, and McNeil did not ask him about that during cross-examination.

- Dr. Maja Mockenhaupt, a dermatologist and epidemiologist and McNeil's only causation witness, testified that in her opinion ibuprofen does not cause SJS/TEN. Trial Tr. Vol. 4 at 1058:19-1059:18, 1144:13-1145:1. She also testified that ibuprofen did not cause Ms. Robinson's TEN. *Id.* She believes Ms. Robinson's TEN had already been initiated when she woke up with a headache in the early morning hours of September 12, 2005, before she took Children's Motrin. *Id.* at 1031:18-1032:13, 1045:21-1046:6, 1144:5-11. Dr. Mockenhaupt never testified that Ms. Robinson's TEN would not have developed without the second and third doses of Children's Motrin, and McNeil never asked her that question.

In sum, McNeil did not elicit any medical testimony that Ms. Robinson's actions in continuing to take Children's Motrin after developing a rash caused or even worsened her TEN. McNeil in fact objected when Plaintiff's counsel sought to explore this issue with Dr. Salisbury,

and that objection was sustained. Trial Tr. Vol. 3 at 418:13-421:7. Because McNeil did not develop this evidence at trial through any of the four causation witnesses that testified, the jury had insufficient evidence to conclude that continuing to take Children's Motrin after the rash developed caused Ms. Robinson's TEN.

> **b.** **McNeil Has Cited No Credible Evidence That Ms. Robinson's TEN Would Not Have Developed But For the Second and Third Doses of Children's Motrin.**

In McNeil's previous briefing on this issue, it contended that there was evidence that Ms. Robinson "would not have contracted SJS/TEN had she not taken more than one dose of Children's Motrin." Docket Entry No. 412 at 3. McNeil identified only three pieces of testimony to support this theory, none of which could possibly support a finding that the second and third doses of Children's Motrin caused or even worsened her TEN.

First, McNeil argued that Plaintiff's expert Dr. Robert Nelson testified that "you have a better chance of survival **once you contract these diseases from drugs** if the drug is removed and—or discontinued as soon as possible, because once the drug is removed, you body can respond. But if you keep on taking the drug, you can get worse and worse . . . ." Docket Entry No. 412 (quoting Trial Tr. Vol. 2 at 88:25-89:9, emphasis added). The key words in this testimony are "once you contract these diseases from drugs." Dr. Nelson's testimony was only that *after TEN develops*, the prognosis improves if the drug is removed. This testimony does not support a conclusion that Ms. Robinson's TEN was caused by her second and third doses of Children's Motrin, but only that those subsequent doses may have lessened her chance for survival. At most, that is an argument that Ms. Robinson failed to mitigate her damages.

Second, McNeil cites Dr. Tackett's testimony that TEN is "unpredictable"[2] as support for its position that Ms. Robinson's actions in taking a second and third dose of Children's Motrin proximately caused her injuries.  Docket Entry No. 412 (citing Trial Tr. Vol. 2 at 226:22-227:3).  The cited testimony cannot possibly support such an inference.  Dr. Tackett testified that TEN is unpredictable from the perspective that doctors and scientists do not know in advance who is going to develop TEN from ibuprofen.  *Id.*  He further stated that the significance of that from a pharmacological perspective is that "[w]hen we are talking about an unpredictable disease, if we know that the disease is basically – if we know the particular mechanism that can be predicted, that drug can be used a lot safer than a drug that is unpredictable."  *Id.* at 226:23-227:3.  In essence, Dr.  Tackett's testimony explains that ibuprofen is less safe than other drugs because it causes TEN to develop unexpectedly.  No reasonable juror could infer that Ms. Robinson's second and third doses of Children's Motrin medically caused her TEN simply because ibuprofen causes TEN unpredictably.

Third, McNeil cites Dr. Maja Mockenhaupt's testimony that TEN does not occur after only a single dose of medication.  Docket Entry No. 412 at 3 (citing Trial Tr. Vol. 4 at 1033:5-11).  The problem with this argument is that Dr. Mockenhaupt clearly testified that in her opinion ibuprofen does not cause SJS/TEN at all and did not cause Ms. Robinson's TEN.  Trial Tr. Vol. 4 at 1058:19-1059:18, 1144:13-1145:1.  The jury could not possibly have inferred from her testimony that additional doses of Children's Motrin caused Ms. Robinson's TEN when Dr. Mockenhaupt's clear position was that ibuprofen doesn't cause this disease at all.   Moreover, Dr. Mockenhaupt testified repeatedly that Ms. Robinson's TEN disease process began with the headache that she had prior to taking her first dose of Children's Motrin.  Trial Tr. Vol. 4 at 1031:18-1032:13,  1045:21-1046:6,  1144:5-11.    Nothing  in  Dr.  Mockenhaupt's  testimony

---

[2] McNeil mistakenly attributes this testimony to Dr. Nelson.

supports an inference that Ms. Robinson's conduct in taking ibuprofen caused her TEN given her testimony that ibuprofen did not cause Ms. Robinson's disease because ibuprofen never causes SJS/TEN and because Ms. Robinson's disease process began before she took Children's Motrin.

### c. McNeil's Argument is Relevant Only to Mitigation of Damages, Not Causation.

At most, Ms. Robinson's decision not to re-read the warnings is a question of whether Ms. Robinson could have mitigated or minimized her damages by stopping the product sooner. This case therefore falls squarely within Virginia case law that draws a distinction between contributory negligence and mitigation of damages. For example, in *Lawrence v. Wirth*, 309 S.E.2d 315 (Va. 1983), the court addressed the plaintiff's medical malpractice claim against her doctor for failing to properly diagnosis and treat a malignant tumor in her breast that later metastisized to terminal bone cancer. The defendant argued that she had been contributorily negligent because, after her initial doctor's visit, the plaintiff noticed that the lump in her breast had grown but she delayed seeking additional medical care for two months. *See id.* at 317. The Virginia Supreme Court rejected the defendant's argument that her delay was a contributing cause that barred her recovery. *See id.* The court explained that "[i]t is a well-established principle of tort law that, to bar recovery, a plaintiff's negligence must *concur* with the defendant's." *Id.* Therefore, a contributory negligence theory was unavailable and her delay could only be considered on the question of whether she acted reasonably to mitigate her damages. *See id.* at 318.

Similarly, in *Sawyer v. Comerci*, 563 S.E.2d 748 (Va. 2002), a contributory negligence defense was not available when the defendant doctor's negligence initially caused the plaintiff's injuries but the plaintiff also disregarded the doctor's advice that might have ultimately prevented his death. There, the decedent sought medical treatment in a hospital emergency room

for abdominal pain.  *See id.* at 750.  The doctor did not correctly diagnose or treat him at the time, but she did advise him not to leave the hospital until a surgical consult could be arranged and she also instructed him to follow up with another doctor.  *See id.* at 751-52.  The plaintiff did not follow this advice, and he was ultimately returned to the hospital with more severe symptoms and died.  *See id.* at 752.  The court held that evidence that the plaintiff left the emergency room against the doctor's advice was not sufficient to establish a *prima facie* case of contributory negligence, although it was evidence that the jury could consider in determining whether he failed to mitigate his damages.  *See id.* at 753-54; *see also Jenkins v. Charleston Gen. Hosp. & Training School*, 110 S.E. 560 (1922) (holding that there was insufficient evidence of contributory negligence even though the patient failed to follow his physician's instructions after a negligent, incorrect diagnosis).

Although these are medical malpractices cases, the same exact reasoning applies here.  The jury had absolutely no medical testimony or other credible evidence that Ms. Robinson's conduct caused her TEN disease process to begin.  Even assuming *arguendo* that her decision not to re-read the warnings regarding stopping the product could somehow be considered unreasonable, that is only evidence regarding whether she acted reasonably to minimize her damages that were already occurring.  That is not evidence that her TEN would not have otherwise occurred if she had stopped taking the product sooner.   There is no evidence that Ms. Robinson's conduct even slightly or remotely caused her TEN to develop, much less that it was the direct cause.  Because the jury did not have sufficient evidence to find that Ms. Robinson's conduct was the proximate cause of her TEN, the contributory negligence finding must be set aside.

**D.**     **There Is Not a Legally Sufficient Evidentiary Basis For a Finding That Plaintiff Karen Robinson Was Negligent.**

Regarding the first element, "[c]ontributory negligence is an affirmative defense that must be proved according to an objective standard whether the plaintiff failed to act as a reasonable person would have acted for his or her own safety under the circumstances." *Fultz v. Delhaize Am., Inc.*, 677 S.E.2d 272, 275 (Va. 2009) (quoting *Moses v. Sw. Va. Transit Mgmt. Co.*, 643 S.E.2d 156, 159 (Va. 2007)). In Virginia, "[t]he essence of contributory negligence is carelessness." *Ponirakis*, 546 S.E.2d at 711.

There is no credible evidence that Karen Robinson failed to act as a reasonable person would have acted for her safety or that she acted carelessly under the circumstances. Defendants have even admitted that that there was no evidence from any witness that Karen Robinson was responsible for her own injuries. As defense counsel Tom Pulliam stated in closing arguments:

> I want to respond, first, to an accusation that's been made over and over and over again, that McNeil is blaming Karen Robinson for her injuries. You have not heard one word out of any of our lawyers' mouths saying that, **not one word out of any of the witnesses saying that**. **We are, of course, not blaming Karen Robinson for her own injuries.** We never have. We never will.

Trial Tr. Vol. VI at 1274:15-21 (emphasis added). This is a judicial admission that Ms. Robinson was not negligent. It is quite evident that McNeil's strategy was to confuse the jury by claiming that it was not blaming Ms. Robinson and citing no actual evidence that she caused her own injuries, while at the same time arguing that she should have read the warning and that the jury should find her contributorily negligent.

Despite McNeil's admission at trial that Ms. Robinson was not to blame for her injuries, in prior briefing McNeil has contended that Ms. Robinson was negligent because she should have read the warning label before she took the product and because she did not stop taking the product once she developed the symptoms of an allergic reaction. Defendants' Opposition to Plaintiff's Motion for Judgment as a Matter of Law (Docket Entry No. 412) at 2. However, a

careful examination of each of these points demonstrates that they are not sufficient evidence of contributory negligence under Virginia law.

1.    **Ms. Robinson's Actions Prior to Taking Children's Motrin Are Insufficient to Show Contributory Negligence.**

First, there is absolutely no evidence that Ms. Robinson's conduct before taking the first dose of Children's Motrin on September 12, 2005, was unreasonable or careless in any way. Defendants have no evidence that Ms. Robinson acted negligently before she took the first dose of Children's Motrin and before her rash occurred. The undisputed evidence showed that Ms. Robinson read the warning label before giving the medication to her son. Defense counsel conceded that Ms. Robinson acted reasonably in reading all the warnings on the Children's Motrin label before giving it to her son Luke and also acted reasonably in giving the medicine to Luke when he was a baby. Trial Tr. Vol. VI at 1321:20-21, 1322:2-5. It is not negligence to read the warning label before taking an over-the-counter (OTC) drug and then deciding to take the drug. If that were the case, then every person who takes any OTC drug would be guilty of contributory negligence. That is not the law.

Defendants have never claimed that there was any warning that Ms. Robinson should have heeded before she took the first dose of Children's Motrin. The evidence is undisputed that the Children's Motrin warning label did not state that the product could cause a rash, much less a severe skin reaction such as TEN, skin sloughing and burns, permanent disablement, scarring, and blindness. Trial Tr. Vol. 3 at 312:3-20, 550:6-9; Plaintiff's Exhibit 230. There was absolutely nothing on the Children's Motrin label or carton that would have indicated to Ms. Robinson that she should not have taken the medication or that it could cause the type of skin reaction that she experienced. Trial Tr. Vol. 3 at 543:16-21, 544:25-545:7; Plaintiff's Exhibit 230. Ms. Robinson cannot be faulted for failing to read a warning that did not exist.

This Court must reject McNeil's argument that Ms. Robinson was negligent for not knowing the proper dose of the medication. As she testified, she took the dose that was appropriate for a six to eight-year old child. Trial Tr. Vol. 3 at 542:6-21. As a matter of law, an adult's actions in taking a child-size dose of medication cannot be considered unreasonable or careless. This evidence is insufficient to show that Ms. Robinson was contributorily negligent.

### 2. The Failure to Read an Inadequate Warning Is Not Evidence of Contributory Negligence.

McNeil contends that, after Ms. Robinson's rash and other symptoms developed, she was negligent for failing to read the warnings regarding stopping use of the product. This argument fails as a matter of law. As the Fourth Circuit has interpreted Virginia law, a plaintiff cannot be held contributorily negligent for failing to read an inadequate warning. *See Spruill*, 308 F.2d at 86-87. In *Spruill*, the court reviewed a case in which the jury found the manufacturer of furniture polish had inadequately warned of the dangers of ingesting its product when the bottle merely stated that swallowing the product may be harmful to children, but the evidence was that ingesting even a small amount would be lethal to children. Although the child's mother had not read the warning label, the court reasoned that because the manufactured had "deprived the mother of an adequate warning which might have prevented the injury, it cannot be permitted to rely upon a warning which was insufficient to prevent the injury." *Id.* at 87. The court further explained that because the warning was insufficient, the "defendants cannot be permitted to take aid and comfort from it to any extent." *Id.*; *see also Stanback v. Parke, Davis & Co.*, 657 F.2d 642, 646 n.5 (4th Cir. 1981) (applying presumption that the plaintiff would have read and heeded an adequate warning in product liability case brought under Virginia law); *Sadler*, 192 Va. at 347 (holding that an inadequate warning is the equivalent of no warning at all).

Likewise, McNeil cannot take any "aid and comfort" from the inadequate warning on its label of Children's Motrin. McNeil's corporate representative, Lynn Pawelski, has admitted that McNeil agreed with the Food and Drug Administration's recommendation that the Children's Motrin label needed to have a more explicit warning about the symptoms of SJS/TEN. Trial Tr. Vol. IV at 972:18-973:16. This is an admission that the warning Ms. Robinson read was inadequate to convey the risks of SJS/TEN. As a matter of law Ms. Robinson cannot be held contributorily negligent for failing to read the warnings on the Children's Motrin label when that label was admittedly inadequate.

### 3. Ms. Robinson Did Not Ignore the Symptoms of an Allergic Reaction.

Finally, the evidence does not support McNeil's argument that Ms. Robinson ignored the symptoms of a "known allergic reaction" because she had experienced a skin reaction in the past after taking the drug Cipro. The records shows that Ms. Robinson went to the doctor on September 13 and September 14, after the second and third doses of Children's Motrin, respectively. Trial Tr. Vol. 3 at 552:19-558:13. She told her doctor that she was taking Motrin and he did not tell her to stop taking it. *Id.* at 554:1-13. No reasonable jury could find that Ms. Robinson "ignored" her allergic reaction when she in fact sought medical attention for those symptoms two days in a row. Even if the jury could somehow fault Ms. Robinson for continuing to take the medication even though she was having an allergic reaction, that alone is insufficient to support the jury's finding that Ms. Robinson failed to act as a reasonable person would for her safety. The evidence that Ms. Robinson experienced a rash after taking Cipro in the past is not sufficient to support the jury's finding that she was contributorily negligent in this case.

In short, the evidence is not legally sufficient to support the jury's finding that Ms. Robinson failed to act as a reasonable person would have acted for her own safety under the

circumstances.  Nothing that she did before she took Children's Motrin the first time could possibly be considered unreasonable or careless, and no reasonable jury could find that she ignored the symptoms that she having an allergic reaction when she in fact sought medical attention the day after her rash developed.  Moreover, to the extent that Ms. Robinson failed to read the warnings regarding stopping the product if new symptoms appear, as a matter of law that conduct is not contributory negligence when McNeil was negligent in failing to place an adequate warning on the bottle of Children's Motrin.  There is simply not more than a scintilla of evidence that Ms. Robinson's conduct was unreasonable or careless.

## II.     THE JUDGMENT SHOULD BE AMENDED UNDER RULE 59(E) TO RENDER JUDGMENT FOR PLAINTIFF ON HER BREACH OF IMPLIED WARRANTY CLAIM AGAINST MCNEIL.

The judgment should be amended under Rule 59(e) of the Federal Rules of Civil Procedure to render judgment for Plaintiff on her breach of implied warranty claim against McNeil.  "Altering or amending a judgment under [Rule] 59(e) is permissible when . . . there has been a manifest error of law or fact."  *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006).

There was a manifest error of law in failing to instruct the jury on Plaintiff's breach of implied warranty claim under Virginia law.  If that instruction had been given, contributory negligence would not have barred Plaintiff's recovery against McNeil.  Under Virginia law, breach of warranty claims are the "functional equivalent" of strict liability claims.  *Bly v. Otis Elevator Co.*, 713 F.2d 1040, 1045 n.6 (4th Cir. 1983).  The legal standard imposed on a product manufacturer is "essentially the same whether the theory of liability is labeled warranty or negligence" because under both claims the product must be shown to be unreasonably dangerous for its intended or foreseeable uses.  *Jeld-Wen, Inc. v. Gamble*, 501 S.E.2d 393, 396 (Va. 1998).

The only practical difference between a negligence claim and a breach of warranty claim is that contributory negligence is not a defense to the latter. *See Jones v. Ford Motor Co.*, 559 S.E.2d 592, 605 (Va. 2002).

The jury implicitly found the elements of Plaintiff's breach of implied warranty claim in finding McNeil negligent because both claims have the same elements. Because contributory negligence is not a defense to breach of implied warranty, the judgment should be amended to render judgment for Plaintiff against McNeil.

Plaintiff respectfully contends that the Court erred in previously finding that she waived her breach of implied warranty claim under Virginia law. At the time the parties prepared their proposed pretrial order, McNeil had not yet requested the application of Virginia law. Illinois law therefore applied in this matter. *See FutureSource LLC v. Reuters, Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002) (until the parties request a choice-of-law analysis, federal courts assume that the law of the forum state applies); *Checkers Eight Ltd. P'ship v. Hawkins*, 241 F.3d 558, 561 (7th Cir. 2001) (same); *Cashen v. Integrated Portfolio Mgmt., Inc.*, No. 08-CV-268, 2008 WL 4976210, at *3 n.5 (N.D. Ill. Nov. 20, 2008) (same). Plaintiff preserved her product liability claim in the proposed pretrial order, which at the time meant that she was pursuing a claim for strict liability under Illinois law. After the proposed pretrial order was drafted and the Court decided to apply Virginia law, but *before the final pretrial order was entered*, Plaintiff sought to clarify that her product liability claim was in fact a claim for breach of warranty under Virginia law. *See* Plaintiff's Objections to the Court's Proposed Preliminary Substantive Instructions (Docket Entry No. 383). At that time, before the final pretrial order was even entered, good cause existed to permit Plaintiff to substitute her warranty claim for her strict liability claim once the Court decided to apply Virginia law. *See* FED. R. EVID. 16(d); *Petersen v. Elmhurst*

*Anesthesiologists, P.C.*, No. 93-C-1468, 1993 WL 400286, at *5 (N.D. Ill. Oct. 6, 1993) (when no final pretrial order has been entered, the standard for modifying a preliminary pretrial scheduling order is for good cause shown).

Moreover, even if the breach of warranty claim was waived, Plaintiff should have been permitted to amend the proposed pretrial order or the final pretrial order to "prevent manifest injustice." FED. R. CIV. P. 16(e). In deciding whether to grant a request to amend a pretrial order, "the court must 'weigh the possible hardships imposed on the respective parties by allowing or refusing to allow the order to be modified; the court must also **balance the need for doing justice on the merits between the parties (in spite of the errors and oversights of their attorneys) against the need for maintaining orderly and efficient procedural arrangements**.'" *Delagrange v. McKinley*, 820 F.2d 229, 232 (7th Cir. 1987) (quoting 3 J. Moore, *Moore's Federal Practice* ¶ 16.20 at 16-19 to 16-80 (2d ed. 1985)) (emphasis added). The Seventh Circuit has also identified the following four factors that should be considered in determining whether the pretrial order should be modified to prevent manifest injustice:

> (1) the prejudice or surprise to the opposing party; (2) the ability of the opposing party to cure the prejudice; (3) the extent to which allowing the amendment of the pretrial order would disrupt the orderly and efficient trial of the case; and (4) any bad faith in the moving party failing to adhere to its pretrial representation.

*Rosby Corp. v. Stoughton Trailers, Inc.*, No. 95 C 511, 2004 WL 1462244, at *2 (N.D. Ill. June 28, 2004) (citing *Smith v. Rowe*, 761 F.2d 360, 365 (7th Cir. 1985)). Under these factors, "a trial court will typically amend the pre-trial order when 'no substantial injury will be occasioned to the opposing party, the refusal to allow the amendment might result in injustice to the movant, and the inconvenience to the court is slight.'" *Helena Assocs., LLC v. EFCO Corp.*, No. 06 Civ 0861 (PKL), 2009 WL 2355811, at *3 (S.D.N.Y. July 29, 2009) (citation omitted). While a

pretrial order should not be amended lightly, "total inflexibility is undesirable." FED. R. CIV. P. 16(e), advisory committee note to 1983 amendment.

The Seventh Circuit has held that a party's disclaimer of a particular claim does not preclude the court from later amending the pretrial order to add that claim. *See Delagrange v. McKinley*, 820 F.2d 229, 232 (7th Cir. 1987). Rather, a waiver or disclaimer is only one factor to be considered in balancing the equities of allowing an amendment to the pretrial order. *See id.*; *see also Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1212 (10th Cir. 2002) (holding that it was an abuse of discretion to deny a request to modify a pretrial order when the request was made prior to trial and when failure to modify would substantially prejudice the moving party); *Dorr-Oliver Inc. v. Fluid-Quip., Inc.*, No. 93 C 842, 1994 WL 13657, at *2-*3 (N.D. Ill. Jan. 6, 1994) (allowing the plaintiff to amend the pretrial order to add five new witnesses because it did not unfairly surprise the defendants).

The balance of equities clearly favored permitting Plaintiff to add in her breach of warranty claim under Virginia law, as the request was made before trial and before the final pretrial order was entered, Defendants were not surprised in any way by Plaintiff's product liability claim, and Plaintiff was not acting in bad faith but merely trying to conform her claims in the pretrial order to this Court's decision to apply Virginia law. Even if the Court believes that Plaintiff's counsel erred in failing to foresee that the Court was going to apply Virginia law to preclude her strict products liability claim, that did not warrant the refusal to allow the amendment. The Seventh Circuit has instructed that this Court is to consider "the need for doing justice on the merits between the parties (in spite of the errors and oversights of their attorneys)." *Delagrange*, 820 F.2d at 232.

Because justice required that Plaintiff be permitted to substitute a breach of warranty claim under Virginia law for the strict liability claim she asserted in the pretrial order under Illinois law, it was error to deny Plaintiff's requested amendment and to refuse to instruct the jury on breach of warranty. That error severely prejudiced Plaintiff, as it meant that contributory negligence barred her otherwise successful verdict against McNeil. That error should be corrected by amending the judgment under Rule 59(e) to state that the jury found against McNeil on the elements of Plaintiff's breach of implied warranty claim and that judgment is rendered for Plaintiff against McNeil.

## III. IN THE ALTERNATIVE, PLAINTIFF SHOULD BE GRANTED A NEW TRIAL.

As an alternative to judgment as a matter of law, Plaintiff seeks a new trial under Rule 59(a) of the Federal Rules of Civil Procedure. In reviewing a motion for a new trial under Rule 59(a), the district court must determine whether "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Winger v. Winger*, 82 F.3d 140, 143 (7th Cir. 1996) (quoting *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 516 (7th Cir.1993)). Unlike a motion under Rule 50, in ruling on a motion for a new trial the Court is free to weigh the evidence, consider the credibility of the witnesses, and take into account anything else which justice requires. *Spanish Action Comm. of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985); *Sachnoff Weaver & Rubenstein, Ltd. v. McKinnon*, No. 88 C 6922, 1991 WL 49639, at *1 (N.D. Ill. Apr. 3, 1991); *Pieczynski v. Cerda*, No. 85 C 5644, 1988 WL 67646, at *1 (N.D. Ill. June 20, 1988). The Court also does not have to view the evidence in the light most favorable to the prevailing party. *See Tibbs v. Fla.*, 457 U.S. 31, 38 n.11 (1982) (quoting *United States v. Lincoln*, 630 F.2d 1313 (8th Cir. 1980)); *Reich v. Minnicus*, 886 F. Supp. 664, 678 (N.D. Ind. 1993). A new trial should be granted when,

after giving full respect to the jury's findings, the court "is left with the definite and firm conviction that a mistake has been committed" by the jury. *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371–1372 (9th Cir. 1987).

Here, a new trial is warranted on the following grounds: (1) the jury's contributory negligence finding was against the great weight of the evidence; (2) it was prejudicial error not to instruct the jury regarding the presumption that Ms. Robinson would have read and heeded an adequate warning; and (3) as set forth above, it was prejudicial error not to instruct the jury on Plaintiff's breach of implied warranty claim that is exempt from the contributory negligence defense under Virginia law. Given that the jury's contributory negligence finding was a complete bar to what would have otherwise been a verdict for Plaintiff, a new trial is warranted to prevent manifest injustice.

For all the reasons outlined above in support of Plaintiff's motion for judgment as a matter of law, the jury's contributory negligence finding was clearly against the weight of the evidence presented at trial. Taking the record as a whole, it is simply not reasonable to conclude that Ms. Robinson failed to act as a reasonable person given that she had read all the warnings on the Children's Motrin label in the past before giving the medicine to her own child, she took only a child-size dose, and she went to the doctor the day after she developed a rash and other symptoms of an allergic reaction. Trial Tr. Vol. 3 at 542:6-21, 543:10-15, 552:19-558:13. She even told her doctor that she was taking Children's Motrin and he did not recommend that she discontinue the medication. *Id.* at 554:1-13.

It is manifestly unfair to completely bar Ms. Robinson's recovery when she acted with more care for her safety than the average person would have. The evidence does not support a finding of contributory negligence solely on the basis that she did not re-read the warnings.

Beyond that, there is absolutely no evidence that her failure to re-read the warnings or to discontinue the medication caused her TEN. The record is completely devoid of any evidence to support the causation element of McNeil's affirmative defense. Under these circumstances, a new trial is warranted.

A new trial is also warranted because the jury was apparently confused about the legal significance of Ms. Robinson's failure to re-read the warnings on the Children's Motrin label. A new trial should be granted to correct erroneous jury instructions when: "(1) the instructions did not adequately state the law, and (2) the error was prejudicial because the instructions confused or misled the jury." *Purtell v. Mason*, No. 04 C 7005, 2006 WL 2037354, at *4 (N.D. Ill. July 18, 2006) (citing *Byrd v. Illinois Dep't. of Pub. Health*, 423 F.3d 696, 705 (7th Cir.2005)).

As Plaintiff previously argued to this Court, under Virginia law she was entitled to a jury instruction McNeil could not rely on Ms. Robinson's failure to read an inadequate warning as a defense in this case. Specifically, Plaintiffs requested an instruction that, "Where a manufacturer is obligated to give an adequate warning of danger, the giving of an inadequate warning is in legal effect no warning, and the manufacturer cannot rely on a defense that the user of its product failed to read or follow the warnings on the product." Docket Entry No. 383, Exhibit B. This is an accurate statement of Virginia law as set forth in *Spruill v. Boyle-Midway, Inc.*, 308 F.2d 79, 86-87 (4th Cir. 1962) and *Sadler v. Lynch*, 192 Va. 344, 347 (1951); *see also Stanback*, 657 F.2d at 646 n.5 (applying presumption that the plaintiff would have read and heeded an adequate warning in product liability case brought under Virginia law).

Given the jury's finding that McNeil was negligent, it appears that the jury in fact determined that even though the warning was inadequate to warn Ms. Robinson of the dangers associated with Children's Motrin, her failure to read those warnings was contributory

negligence. Such a conclusion is contrary to Virginia law. Because the jury was confused on this point and it affected the outcome of this entire case, a new trial is warranted.

Finally, Plaintiff respectfully suggests that a new trial is warranted to cure the manifest injustice caused by the failure to instruct the jury on Plaintiff's breach of implied warranty claim. As set forth above, it was error to refuse this instruction. Plaintiff respectfully suggests that a new trial is warranted to cure the manifest injustice caused by this error so that Plaintiff may pursue her breach of implied warranty claim under Virginia law.

## CONCLUSION

For the foregoing reasons, Plaintiff is entitled to judgment as a matter of law on McNeil's affirmative defense of contributory negligence and to an amendment of the judgment to state that the jury found against McNeil on the elements of her claim for breach of implied warranty. She requests that judgment be rendered for Plaintiff. In the alternative, Plaintiff seeks a new trial because the verdict against Plaintiff was against the great weight of the evidence and the trial was unfair to the extent that erroneous jury instructions prejudiced Plaintiff.

Dated: September 16, 2009                    Respectfully submitted,

                                             */S/* Dana Simon
                                             _____
                                             Dana C. Simon
                                             State Bar of Texas No. 24032191
                                             David C. Greenstone
                                             State Bar of Texas No. 24007271
                                             Jeffrey B. Simon
                                             State Bar of Texas No. 00788420
                                             SIMON, EDDINS & GREENSTONE, LLP
                                             3232 McKinney Avenue, Suite 610
                                             Dallas, Texas 75204
                                             Tel: (214) 276-7680
                                             Fax: (214) 276- 7699

                                             John D. Cooney
                                             James E. Ocasek

COONEY & CONWAY
120 North LaSalle Street, 30th Floor
Chicago, Illinois 60602
Tel: (312) 236-6166
Fax: (312) 236-3029
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I, Dana C. Simon, hereby certify that on the 16th day of September, 2009, I caused a copy of *Plaintiffs' Renewed Motion for Judgment as a Matter of Law, Motion to Amend the Judgment, and Motion for New Trial* to be filed and served via the CM/ECF electronic filing system upon the following counsel of record:

John Dames
David B. Sudzus
Russell J. Chibe
Drinker, Biddle & Reath, LLP
191 North Wacker Dr., Ste. 3700
Chicago, IL 60606
John.dames@dbr.com
David.sudzus@dbr.com
Russell.chibe@dbr.com
**COUNSEL FOR DEFENDANTS MCNEIL
CONSUMER HEALTHCARE (a division
of McNeil-PPC, Inc.) and JOHNSON & JOHNSON**

*/S/* Dana Simon

_____
DANA C. SIMON