IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KAREN ROBINSON,                          )
                                         )
                Plaintiff,               )
                                         )
        v.                               )        No. 07 C 5603
                                         )
MCNEIL CONSUMER HEALTHCARE,              )
a Division of MCNEIL-PPC, INC., and      )
JOHNSON & JOHNSON,                       )
                                         )
                Defendants.              )

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

After a six-day jury trial in this pharmaceutical product liability case, the jury reached a

verdict, finding for plaintiff Karen Robinson on her negligence claim against defendant McNeil

Consumer Healthcare ("McNeil") but not on her identical claim against defendant Johnson &

Johnson (collectively "Defendants"). The jury also found that Robinson was contributorily

negligent and that her negligence proximately caused her injuries. Applying Virginia law, the court

has determined that her contributory negligence completely barred her recovery against McNeil.

During trial, the parties filed timely motions for judgment as a matter of law under Federal

Rule of Civil Procedure 50(a). After entry of the judgment on the jury's verdict, Robinson filed her

"Renewed Motion for Judgment as a Matter of Law, Motion to Amend the Judgment, and Motion

for New Trial" [424], which is currently before the court. Defendants also filed their "Conditional

Renewal of Rule 50(a) Motion for Judgment as Matter of Law Pursuant to Rule 50(b) After Trial"

[422] in the event the court sets aside the jury's verdict entered in their favor. For the reasons

explained below, Robinson's motion is denied, and, as a result, Defendants' motion is denied as

moot.

BACKGROUND

In the early hours of September 12, 2005, Karen Robinson awoke with a headache and decided to take her son's Children's Motrin to treat the pain. (Trial Tr. 540:18-541:1; 541:8-16; 541:25-542:21.) Although she had read the product's warnings when she first purchased the product for her son about four or five months earlier, she did not review those warnings before taking the product on this occasion. (*Id.* at 596:10-14.) She took the dosage amount for a six to eight year old child–two teaspoons–and went back to bed. (*Id.* at 541:25-542:21.) When she awoke on September 12, 2005, she noticed some discoloration on her chest which continued to darken as the day progressed. (*Id.* at 549:17-21; 550:20-551:4.) During the middle of the second night she developed a fever and again decided to take two teaspoons of Children's Motrin. (*Id.* at 551:19-552:14.)

The following day, September 13, 2005, Karen Robinson saw a doctor, Dr. Glenn Anderson, who prescribed a Medrol Pack to treat the apparent allergic reaction. (*Id.* at 553:14-17; 553:22-25; 554:14-18.) Although Robinson informed her doctor that she had taken Children's Motrin, she did not discuss with him whether she should continue taking the medication. (*Id.* at 554:1-11.) Later that evening, the rash began forming blisters, and during the middle of the night, she noticed that her fever had increased. (*Id.* at 555:13-25; 556:16-21.) Robinson took the third and final, two teaspoon dose of Children's Motrin around 2 or 3 o'clock in the morning on September 14, 2005. (*Id.* at 557:8-21; 558:1-4.) Because both her fever and rash were worsening despite having taken Medrol Pack, Robinson returned to her doctor in the morning on September 14, 2005. (*Id.* at 558:5-13.) She was hospitalized at the Fairfax, Virginia hospital and eventually transferred to the burn unit at Johns Hopkins in Maryland. (*Id.* at 560:5-8; 560:17-19.)

2

Robinson was diagnosed with toxic epidermal necrolysis ("TEN"), a severe form of Stevens-Johnson syndrome ("SJS") that attacks an individual's mucosal linings and results in severe internal and external burning.[1]  (*Id.* at 77:13-78:14.)  Robinson not only experienced significant skin sloughing but also blistering and burning throughout her body, including her mouth, eyes, throat, and internal systems.  (*See generally id.* at 561:24-570:12 (testimony of Karen Robinson discussing extent of her injuries).)  Due to the severity of her injuries, she was hospitalized for nearly a month.  (*Id.* at 560:14-16.)  Robinson ultimately lost the vision in her left eye and has limited vision in her right eye, which requires constant medical treatment.  (*Id.* at 568:18-569:14.)

Karen and Jonathon Robinson originally filed this lawsuit in Illinois state court against McNeil, the manufacturer of Children's Motrin, and Johnson & Johnson, McNeil's parent corporation, alleging that Karen Robinson suffered physical injuries resulting from her ingestion of Children's Motrin in September 2005.  Defendants removed this lawsuit to federal court based on diversity jurisdiction in October 2007.

Before trial, the court determined that Virginia law applied to the Robinson's claims, thereby barring Jonathon Robinson's sole claim for loss of consortium and Karen Robinson's strict liability claims.  (Dkt. No. 306.)  The court additionally found that any punitive damages would be capped at $350,000 as required by Virginia law.  (*Id.*)  Because Robinson expressly waived her implied warranty claims in the parties' Final Proposed Pretrial Order without respect to whether Illinois or Virginia law governed (*see* Dkt. No. 245), the court also precluded Robinson from pursuing that theory of liability at trial (*see* Dkt. No. 400).

---

[1]  The difference between SJS and TEN is the amount of skin sloughing a patient experiences.  With SJS, the patient typically loses ten percent or less of his or her skin; with TEN, the patient loses more than thirty percent.  (*See* Nelson Test., Trial Tr. 78:15-23.)

The case proceeded to trial on Robinson's two negligence theories against McNeil and Johnson & Johnson: (1) the Children's Motrin was defectively designed, and (2) the Children's Motrin's warnings were inadequate. Defendants denied that they were negligent and further asserted that notwithstanding any alleged negligence, Karen Robinson's own contributory negligence barred her recovery.

After the six-day trial, the jury returned a verdict finding that defendant McNeil, but not defendant Johnson & Johnson, was negligent and that its negligence proximately caused Karen Robinson's injuries. The jury also found that Robinson was contributorily negligent. Under Virginia law, Robinson's contributory negligence is a complete bar to recovery. *Litchford v. Hancock*, 352 S.E.2d 335, 337 (Va. 1987) ("[A]ny negligence of a plaintiff which is a proximate cause of the accident will bar a recovery.").

During the trial, at the conclusion of the evidence, the parties filed timely motions for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). Currently before the court is Robinson's "Renewed Motion for Judgment as a Matter of Law, Motion to Amend the Judgment, and Motion for New Trial" [424], and Defendants' "Conditional Renewal of Rule 50(a) Motion for Judgment as Matter of Law Pursuant to Rule 50(b) After Trial" [422]. For the reasons explained below, Robinson's motion is denied, and, as a result, Defendants' motion is denied as moot.

<u>ANALYSIS</u>

1.    Judgment as a Matter of Law

As a federal court exercising diversity jurisdiction under 28 U.S.C. § 1332, this court applies federal law in determining whether a party deserves judgment as a matter of law. *Groom v. Days Inn of Am., Inc.*, 62 F.3d 204, 207 (7th Cir. 1995); *Walter v. Bruhn*, Nos. 01-2260 & 01-2261, 40 Fed.

Appx. 244, at *246 (7th Cir. July 1, 2002) ("Although courts in this circuit formerly applied state standards to the determination of mid-trial and post-trial motions regarding the sufficiency of the evidence, we have since adopted the federal reasonable-person standard across the board: pre-trial, mid-trial, post-trial, and on appeal, for evaluating both the merits and the quantum of relief, in diversity as well as federal question cases.") (citations & internal quotations omitted).

Under Federal Rule of Civil Procedure 50, judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149 (2000) (quoting Fed. R. Civ. P. 50(a)). In performing this analysis, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Waite v. Bd. of Trs.*, 408 F.3d 339, 343 (7th Cir. 2005). The court "will overturn a jury verdict . . . only if [it] conclude[s] that no rational jury could have found for [the nonmovant]." *Id.* (citation omitted). Based on the deference afforded to the jury's verdict, the Rule 50 standard "is obviously a difficult standard to meet." *Id.*; *see also Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1043 (7th Cir. 1999) ("Attacking a jury verdict is a hard row to hoe.").

In this case, Robinson challenges the jury's finding that she was contributorily negligent. According to Robinson, the jury could not have reasonably found that (1) she was negligent, and (2) her negligence proximately caused her injuries, as is required under Virginia law. *See Karim v. Grover*, 369 S.E.2d 185, 186 (Va. 1988) (discussing contributory negligence elements).

A. Jury's Finding that Robinson Acted Negligently

Robinson advances three primary arguments in support of her contention that the record lacks a legally sufficient evidentiary basis to support the jury's conclusion that she acted negligently: (1)

5

defense counsel's statement that McNeil was not "blaming" Robinson qualifies as a judicial admission that she was not negligent; (2) no reasonable jury could find that her actions were negligent; and (3) failure to read an inadequate warning cannot be negligent as a matter of law.

      i.     Defense Counsel's "Admission" that Robinson Was Not Negligent

According to Robinson, the following excerpt from defense counsel's closing argument amounts to a "judicial admission that Ms. Robinson was not negligent":

> I want to respond, first, to an accusation that's been made over and over and over again, that McNeil is blaming Karen Robinson for her injuries. You have not heard one word out of any of our lawyers' mouths saying that, **not one word out of any of the witnesses saying that. We are, of course, not blaming Karen Robinson for her own injuries.** We never have. We never will.

(Pl.'s Mot. 15 (citing Trial Tr. 1274:15-21).) Robinson additionally identifies multiple authorities as support for the proposition that "blame" and "contributory negligence" "are commonly understood to be the same thing." (*See* Dkt. No. 448, Pl.'s Reply 2-3; Dkt. No. 454, Pl.'s Final Reply 3-4.) The court, however, is not persuaded that this statement amounts to a judicial admission that Robinson was not negligent.

"The scope of a judicial admission by counsel is restricted to unequivocal statements as to matters of fact which otherwise would require evidentiary proof; it does not extend to counsel's statements of his conception of the legal theory of a case." *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 681 (7th Cir. 2002) (Rovner J., concurring) (quoting Michael H. Graham, 30B *Federal Practice and Procedure: Evidence* § 7026 (Interim ed. 2002)); *see also N.Y. State Nat'l Org. for Women v. City of N.Y.*, 159 F.3d 86, 97 n.7 (7th Cir. 1998) ("Plaintiffs' statements of their theory of the case do not constitute judicial admissions.").

The Sixth Circuit's decision in *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337 (6th Cir.

1997), is instructive. In *MacDonald*, several university students were either killed or injured during an automobile accident en route to a debate tournament. The plaintiffs sued the university and its employees, including the driver of the university van, and General Motors. During his opening statement, General Motors's counsel remarked that the driver "didn't do anything wrong in our estimation," "we are not suggesting that [the driver] was negligent," and "[i]t was an accident not the result of negligence or fault of General Motors or anybody else." *Id.* at 339-40. The plaintiffs argued that these statements were judicial admissions by General Motors that the driver and the university were not negligent. Both the district court and the Sixth Circuit disagreed. The Sixth Circuit offered three reasons why these statements did not qualify as a judicial admissions: (1) the statements were not "deliberate, clear and unambiguous"; (2) "the statements were not deliberate waivers of the right to present evidence of [the driver's] and the University's negligence"; and (3) the "statements dealt with opinions and legal conclusions" which the court was "reluctant to treat as binding judicial admissions." *Id.* at 340-41.

Similarly here, the court finds that defense counsel's statement in his closing argument that McNeil was not "blaming" Robinson for her injuries does not amount to a judicial admission barring McNeil from prevailing on its contributory negligence defense. First, this statement was not a "deliberate, clear, and unambiguous" recognition that Robinson was not negligent. Instead, as McNeil contends, when considered in context, these remarks are simply attorney argument responding to Robinson's counsel's previous comments that McNeil was blaming Robinson for her injuries. (*See, e.g.,* Trial Tr. 1252:8-10 ("And, yet, they're blaming her for not being–not somehow picking up on that it could have done this to her. Now they blame her for being misled.").)

Second, the court finds that counsel's statements were not a "deliberate waiver" of McNeil's

right to pursue its contributory negligence defense. Throughout this litigation, McNeil has maintained its position that Robinson's contributory negligence bars her recovery. (*See, e.g.,* Defs.' Preliminary Proposed Jury Instructions 44, attached as Ex. J to Dkt. No. 245, Parties' Final Proposed Pretrial Order; Dkt. No. 412, Defs.' Opp. Pl.'s Mot. J. Matter Law.) Defense counsel's statement, therefore, does not evidence McNeil's intent to waive that defense. *See MacDonald*, 110 F.3d at 340; *see also McCaskill*, 298 F.3d at 682 (Rovner J., concurring) ("[Defendant] never repudiated the arguments in its brief . . . . Even if judicial admissions extended to legal opinions, which is clearly false, the statement at issue here cannot be characterized as an unambiguous, intentional waiver of the arguments made in its brief.").

Lastly, like the statements at issue in *MacDonald*, the challenged remarks in this case "deal[] with opinions and legal conclusions," not facts. *MacDonald*, 110 F.3d at 341 (recognizing that counsel's statement regarding "whether [the driver] was negligent and whether he caused the accident" "dealt with legal conclusions"). Thus, they are not binding judicial admissions. *Id.* The court, therefore, declines to find that defense counsel's statement that McNeil was not blaming Robinson for her injuries amounts to a judicial admission that she was not negligent.

ii.      Effect of Robinson's Failure to Read the Children's Motrin's Warnings

Robinson also argues that her conduct was not negligent because "under Virginia law, failure to read an adequate warning is not evidence of contributory negligence." (Pl.'s Mot. 1.) Having reviewed the authorities Robinson cites for this proposition, the court is not persuaded that this legal theory accurately reflects Virginia law. *Sadler v. Lynch*, 64 S.E.2d 664 (Va. 1951), the only Virginia authority identified by Robinson, merely recognizes that "an insufficient warning is in legal effect no warning." *Id.* at 666. It offers no further elaboration on how this proposition impacts a

defendant's contributory negligence defense.

Altlhough *Spruill v. Boyle-Midway, Inc.*, 308 F.2d 79 (4th Cir. 1962), also cited by Robinson, discusses the interaction between failure to read a product's warnings and the ability of a defendant to charge a plaintiff with contributory negligence, the facts of that case are distinguishable on a significant point overlooked by Robinson.  In *Spruill*, the court focused not only on the content but also the *form* of the defendant's labeling in determining that the defendant could not rely on the failure to read the warnings to bar the plaintiff's recovery:

> The notice here given was not printed on the label in such a manner as to assure that a user's attention would be attracted thereto.  Indeed, we think one might reasonably conclude that it was placed so as to conceal it from all but the most cautious users.  It is located in the midst of a body of print of the same size and color, with nothing to attract special attention to it except the words 'Safety Note.'

*Id.* at 86.  Because "[t]he jury . . . could reasonably find that the warning given was insufficient *both in form and in content*," the court found that "the mother's admission that she never read the label" did not preclude the plaintiff's recovery.  *Id.* at 86-87 (emphasis added).

The failure-to-warn caselaw further confirms that Robinson's expansive interpretation of *Spruill* is unsupported.  Indeed, contrary to Robinson's contentions, courts faced with this issue routinely determine that where, as here, the adequacy of the form or prominence of the warnings is not in dispute, a plaintiff's failure to read the warnings *is* a bar to recovery.  *See E.R. Squibb & Sons, Inc. v. Cox*, 477 So. 2d 963, 970-71 (Ala. 1985) (citing *Spruill* and discussing contrast between plaintiff's failure to read a warning in such situations presented in *Spruill*, where "plaintiff alleges that the warning is inadequate with respect to prominence" and those where "nothing in the nature of [defendant's] inadequate warning prevented plaintiff from reading it"); *Mustafa v. Halkin Tool, Ltd.*, 00-CV-4851, 2007 U.S. Dist. LEXIS 23096, at *68 (E.D.N.Y. Mar. 29, 2007) ("[T]here is some

authority for the proposition that even a plaintiff who concededly failed to read product warnings may still prove causation if he can demonstrate . . . that he would have read the warning had it been more prominent or conspicuously placed . . . ."); *Mohney v. USA Hockey, Inc.*, 300 F. Supp. 2d 556, 579-80 (N.D. Ohio 2004) (granting summary judgment on failure-to-warn claim where plaintiff admitted to not reading the warnings and "[a]ny contention that the warning(s) were inconspicuous or obscure [was] belied by [plaintiff's] own testimony"); *Rowson v. Kawasaki Heavy Indus.*, 866 F. Supp. 1221, 1236 (N.D. Iowa 1994) ("[A] plaintiff who does not read an allegedly inadequate warning cannot maintain a negligent-failure-to-adequately-warn action unless the nature of the alleged inadequacy is such that it prevents him from reading it." (quoting *E.R. Squibb*, 477 So. at 970-71)); *Elam v. Lincoln Elec. Co.*, 841 N.E.2d 1037, 1042-43 (Ill. App. Ct. 2005) ("[A] plaintiff who does not read an allegedly inadequate warning cannot maintain a negligent-failure-to-warn action *unless* the nature of the alleged inadequacy is such that it prevents him from reading it.") (citations omitted). Robinson's theory, therefore, improperly extends a limited exception into an unqualified rule immunizing plaintiffs for their failure to read warnings regardless of whether the warnings were conspicuously placed. Such a proposition is not supported by the Virginia caselaw, and the court declines to adopt it.

Moreover, although a plaintiff's failure to read or heed warnings typically affects the plaintiff's ability to prove the causation element of a negligence cause of action, *see* 2 Frumer & Friedman, *Products Liability* § 12.04 (rev. ed. 2009) ("Where the plaintiff did not read the instructions on a product before an incident, many courts hold that an inadequate warning cannot be the proximate cause of the resultant injury . . . ."), courts have deemed such a failure relevant to the contributory negligence inquiry. For example, *Sadler v. Lynch*, 64 S.E.2d 664, 666 (Va. 1951), cited

by Robinson, recognized that "[w]hen a proper warning has been given, a defendant is relieved from liability for injuries received by one who does not heed it; *and failure to heed it is usually contributory negligence.*" *Id.* at 666 (emphasis added); *see also Thornton v. E.I. Du Pont De Nemours & Co.*, 22 F.3d 284, 289-90 (11th Cir. 1994) ("Georgia courts have held that a plaintiff's failure to read a warning printed on a product constitutes contributory negligence and precludes recovery against the product's manufacturer."); *Champs Convenience Stores, Inc. v. U. Chem. Co.*, 406 S.E.2d 856, 861 (N.C. 1991) (affirming lower court's jury instruction informing the jury that plaintiff's failure to read warning can constitute contributory negligence). This court, therefore, does not find that a plaintiff's failure to read warnings cannot be contributorily negligent as matter of law.

Lastly, this argument further fails because it relies on the unsupported assumption that the Children's Motrin's warnings were legally inadequate. The jury, however, did not make this determination. Instead, it returned a general verdict finding that McNeil's negligence proximately caused Robinson's injuries; whether the jury found that the warnings were *adequate* and instead based McNeil's negligence on its failure to use ordinary care in designing Children's Motrin is unknown. Consequently, Robinson's flawed theory that failure to read inadequate warnings can never constitute contributory negligence does not entitle her to judgment as a matter of law on McNeil's contributory negligence defense.

iii.     Legally Sufficient Evidence that Robinson Was Negligent

Based on the evidence, when viewed in the light most favorable to McNeil, the jury also could reasonably conclude that Robinson's failure to read the Children's Motrin's warnings and her subsequent decision to continue taking the product as new symptoms developed was negligent.

Negligence is ordinarily a question of fact for the jury. *Lyle, Siegel, Croshaw & Beale, P.C.*

*v. Tidewater Capital Corp.*, 457 S.E.2d 28, 32 (Va. 1995).  The court instructed the jury that Robinson "was negligent . . . [if] she failed to act as a reasonable person would have acted for her own safety under the circumstances of this case."  (Dkt. 415, Final Jury Instructions 11.)  Robinson testified that although she previously had read the warning labels when giving the Children's Motrin to her son, she neither re-read nor considered the warnings when she took the product herself in September 2005.  (Trial Tr. 610:17-22; 618:14-16.)

The Children's Motion label notified users of potentially severe allergic reactions: "Allergy alert: Ibuprofen may cause a severe allergic reaction which may include hives."  (Defense Ex. 114.)  It further instructed users to "stop use and ask a doctor if an allergic reaction occurs" and to "stop use and ask a doctor if any new symptoms appear."  (*Id.*)  Having not re-read these warnings, Robinson continued to take the product after experiencing an allergic reaction (i.e., a rash) and developing new symptoms (i.e., both a rash and fever).

Robinson, however, argues that no reasonable jury could find that she was negligent because she sought medical treatment after taking the second and third doses of Children's Motrin.  The court disagrees.  First, relying on Robinson's actions *before* seeking treatment, the jury reasonably could have concluded that by failing to read the product's warnings and taking the second dose of Children's Motrin after developing both new symptoms and signs of an allergic reaction, Robinson was negligent.  Moreover, the evidence also supports a finding that her actions *after* seeing the doctor were negligent.  Namely, she never discussed with her doctor whether she should continue treating her symptoms with the Children's Motrin and proceeded to take a third dose without reviewing or considering product's warnings.  Consequently, the record contains sufficient evidence from which the jury could reasonably conclude that Robinson was negligent.

B.  Jury's Finding that Robinson's Negligence Proximately Caused Her Injuries

The court now turns to Robinson's argument that the record lacks a legally sufficient evidentiary basis from which the jury could reasonably determine that her negligence proximately caused her injuries.  As support for this position, Robinson argues that (1) the record lacks any credible medical evidence that her injuries would not have occurred but for her negligence; and (2) under Virginia law, Robinson's negligent actions are only relevant to mitigation of her damages, not contributory negligence.  The court does not find that either of these arguments warrants overturning the jury's verdict.

i.  Sufficiency of the Medical Evidence

According to Robinson, her failure to re-read the warnings when she took the Children's Motrin in September 2005 could not have proximately caused her injuries because the warnings would not have prevented her from taking the initial dose of Children's Motrin on the morning of September 12, 2005.  (Pl.'s Mot. 7.)  She further alleges that the TEN inevitably resulted from the first dose of medication, and, as a result, her failure to heed the warnings and cease taking the product after additional symptoms developed could not have been a "but for" cause of her injuries.  (*Id.*)

Whether Robinson's negligence proximately caused her injuries was a factual question for the jury.  *See Koutsounadis v. England*, 380 S.E.2d 644, 647 (Va. 1989) ("[Q]uestions of proximate causation are generally for the jury.").  The court instructed the jury that "proximate cause" means "a cause which, in natural and continuous sequence produces the accident, injury, or damages.  It is a cause without which the accident, injury, or damages would not have occurred."  (Final Jury Instructions 8.)  Although the court agrees with Robinson that reading the Children's Motrin's warnings would not have prevented her from taking the original dose on September 12, 2005, the

record contains sufficient evidence, when viewed in the light most favorable to McNeil, from which a reasonable jury could conclude that her failure to read the warnings coupled with taking the second and third doses of Children's Motrin despite the product's warnings did proximately cause her injuries.

First, the testimony of Robinson's expert, Dr. Robert Nelson, a pharmacoepidemiologist who has studied the benefits and risks of diseases in populations for over thirty years (Trial Tr. 65:17-24; 66:12-14), supports the jury's proximate cause determination. Discussing certain articles in the SJS and TEN field, Dr. Nelson explained that individuals

> have a better chance of survival once [they] contract [SJS and TEN] from drugs if the drug is removed and – or discontinued as soon as possible, because once the drug is removed, [their] body can respond. But if [they] keep on taking the drug, [they] can get worse and worse.

(*Id.* at 88:18-89:5.) He further acknowledged that when individuals determine "which drug potentially was causative and [they] stopped it earlier, [they] are more likely to survive." (*Id.* at 103:5-14.)

Additionally, McNeil's causation expert, Dr. Maja Mockenhaupt, testified that she had "never seen a patient who developed SJS or TEN after one dose of a medication." (*Id.* at 1033:10-11.) From this evidence, the jury could infer that the first dose of Children's Motrin did not cause Robinson's TEN.

Robinson, however, challenges whether the jury could draw this inference from Dr. Mockenhaupt's testimony. According to Robinson, the jury could not have relied on *any* of her testimony because it disagreed with Dr. Mockenhaupt's conclusion that the Children's Motrin did not cause Robinson's TEN. (*See* Pl.'s Reply 9.) The jury, however, is "free to believe part of [the witness's] testimony and to reject other parts." *Bergmann v. McCaughtry*, 65 F.3d 1372, 1378 (7th

Cir. 1995). Consistent with this Seventh Circuit authority, the court instructed the jury, without objection from Robinson, that it "may believe everything a witness says, or part of it, or none of it." (Final Jury Instructions 3.) Thus, Robinson's contention that the jury could not have relied on Dr. Mockenhaupt's testimony in assessing Robinson's contributory negligence lacks merit.

Robinson further argues that even if the jury did rely on Dr. Mockenhaupt's testimony, that testimony is insufficient evidence of causation because it does not provide "scientific evidence that Ms. Robinson's TEN would not have developed without multiple doses of Children's Motrin." (Pl.'s Reply 9.) The court disagrees. Dr. Mockenhaupt testified as an expert in SJS and TEN: she is a senior physician in dermatology at the University Hospital of Dermatology in Freiburg, Germany (Trial Tr. 1005:24-1006:2), has written over fifty original papers and teaching articles on the topic of medications and SJS and TEN (*id.* at 1007:22-1008:2), has participated in several significant studies related those conditions (*id.* at 1010:6-20; 1020:23-1021:12), and has treated several hundred SJS and TEN patients over a period of almost twenty years (*id.* at 1020:4-8). She testified–without any objection from Robinson's counsel–that, in her experience and observation, she had never seen a patient who developed SJS or TEN after one dose of a medication. (*Id.* at 1033:5-11.) This testimony was sufficiently reliable under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and jury therefore was entitled to consider it.

Lastly, the court notes that although Robinson's current causation theory assumes that her injuries were the inevitable result of the original dose of Children's Motrin, during her direct testimony both she and her counsel acknowledged that the two additional doses potentially increased the severity of her injuries:

Q:     [D]uring the two days, you've got three doses over two days of this Children's

Motrin, did you have any idea that each additional dose may be increasing the

damage to you?

A:     Well, they say hindsight is the best teacher. I wish to God I had known that

or else I wouldn't have continued, obviously.

(Trial Tr. 559:11-17.)[2]  Consequently, viewing the evidence in the light most favorable to McNeil,

a reasonable jury could find that Robinson's negligence proximately caused her injuries.

ii.     Mitigation of Damages

Relying on the Virginia Supreme Court's pronouncement that "[i]t is a well-established

principle of tort law that, to bar recovery, a plaintiff's negligence must *concur* with the defendant's,"

*Lawrence v. Wirth*, 309 S.E.2d 315, 317 (Va. 1983), Robinson argues that her allegedly negligent

actions are only relevant to mitigation of damages–not contributory negligence–because those actions

did not "concur" with McNeil's.  (*See* Pl.'s Mot. 13-14.)[3]  Robinson has not identified any Virginia

authority extending this rationale into the product liability context but instead argues that the Virginia

medical malpractice cases she has identified are analogous to the instant case.  This analogy,

[2]  During opening statements, Robinson's counsel echoed this understanding, informing the jury that "the thing that's most important is stopping use of the drug as soon as you first see a rash."  (Trial Tr. 11:19-20.)

[3]  Although the court will address Robinson's mitigation of damages theory on the merits, the court notes that she arguably waived this argument by never proposing any jury instructions reflecting this theory nor objecting that the contributory negligence instruction presented to the jury lacked this alleged concurrence requirement.  *Jabat, Inc. v. Smith*, 201 F.3d 852, 857 (7th Cir. 2000) ("When parties do not object to jury instructions, these instructions generally become the law of the case. Once the law of the case is settled, the parties can only argue that the jury did not properly apply the instructions to the facts.") (citations omitted); *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 675 (7th Cir. 1985) ("[I]n a civil case each party must live with the legal theory reflected in instructions to which it does not object.").

however, is not availing under the circumstances of this product liability case.

Imposing such a stringent standard for proving contributory negligence likely would preclude manufacturers from ever prevailing under the defense because, as is inherent in product liability cases, the manufacturer's allegedly negligent conduct (e.g., the design of its product and creation of its warning label) always occurs before a consumer's negligent use of the product. Consequently, the court is not persuaded that the Virginia Supreme Court intended the "concurrence" requirement to apply with equal force in product liability actions, at least from the temporal concurrence stand point.

Moreover, adopting Robinson's rationale would contradict Virginia authority recognizing that a plaintiff may be contributory negligent in a product liability action even though the defendant's alleged negligence preceded the plaintiff's. *See Jones v. Ford Motor Co.*, 559 S.E.2d 592, 605 (Va. 2002) (finding that contributory negligence jury instruction was proper where defendant had "presented evidence that if a sudden acceleration event occurred because of a defect in the cruise control system, the plaintiff could have stopped the car by applying the brake pedal"). The court, therefore, declines to adopt Robinson's theory that she cannot be contributorily negligent because her negligent actions did not "concur" with McNeil's.

Based on the above, the court finds that the record contains sufficient evidence, when viewed in the light most favorable to McNeil, from which the jury reasonably could conclude that Robinson was negligent and that her negligence proximately caused her injuries. Robinson's motion for judgment as a matter of law that she was not contributorily negligent is denied.

2.      Motion to Amend Judgment Under Rule 59(e)

Robinson also requests that the court amend the judgment under Federal Rule of Civil

Procedure 59(e) and render judgment for Robinson on her breach of implied warranty claim against McNeil. "Altering or amending a judgment under Rule 59(e) is permissible when . . . there has been a manifest error of law or fact." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). According to Robinson, the court's failure to instruct the jury on her breach of implied warranty claim was a manifest error of law, warranting an amendment of the judgment. The court previously addressed this issue in denying Robinson's "Emergency Motion to Amend the Final Pretrial Order and for Reconsideration of Ruling that Plaintiff Has Waived Her Breach of Warranty Claim Under Virginia Law" (Dkt. No. 400), and maintains its position that Robinson was not entitled to a jury instruction on that claim.

In the parties' Final Proposed Pretrial Order, Robinson expressly and unequivocally waived her breach of implied warranty claim:

> (k) Plaintiffs do not intend to pursue their claims based on consumer fraud, battery, breach of express warranty and *breach of implied warranty*.

(Dkt. 245, Final Proposed Pretrial Order 11 (emphasis added).) She did not condition her withdrawal on the assumption that Illinois law would apply to her claims. At the time Robinson waived this claim, however, the court had not decided whether the substantive laws of Illinois or Virginia would govern.

This choice of law issue remained unresolved until Defendants moved *in limine* requesting that the court (1) find that Virginia law governs both Karen Robinson's claim for punitive damages and Jonathon Robinson's claim for loss of consortium, and (2) exclude certain evidence based on that choice of law determination. After applying a choice of law analysis under Illinois law, the court held that Virginia's substantive law would apply at the trial to all of the Robinsons's claims, including Karen Robinson's strict liability claims which are barred under Virginia law. (*See* Dkt.

306.)

Based on the distinctions between Illinois and Virginia product liability law, Robinson sought to modify the pre-trial order and re-assert her previously waived breach of implied warranty claim. "In order for a pretrial order to have any value as a procedural mechanism and to protect against the possibility of either of the parties being taken by surprise at trial, the parties must be held to the issues set forth in that order." *Harper v. Albert*, 400 F.3d 1052, 1063 (7th Cir. 2005). Consequently, the court may modify a final pretrial order "under very limited circumstances and only in those cases where failure to do so would result in 'manifest injustice.'" *Id.* (citing Fed. R. Civ. P. 16(e)). Because the court found that Robinson was on notice of the choice of law issue but explicitly waived her breach of implied warranty claim while this issue remained unresolved, it concluded that manifest injustice would not result by declined to modify the pre-trial order.

Specifically, in Defendants' summary judgment briefing, they informed Robinson that substantive Virginia law could govern if this case proceeded to trial:

> There is no need for this Court to decide whether it is Illinois law or Virginia law that applies in deciding this Motion because the laws are not in conflict in any material issue. *The choice of law analysis will be addressed in a separate motion if this case survives summary judgment and proceeds to trial.*

(Dkt. 147, Defs.' Mot. for Summ. J. 2 n.4 (emphasis added).) In that motion, Defendants also repeatedly cited to and relied upon Virginia authority. (*See id.* at 14-16.) Moreover, Robinson conceded that her counsel were aware that Defendants were planning to file a choice of law motion regarding the application of Virginia law before the parties filed their Final Proposed Pretrial Order. (*See* Dkt. 398, Pl.'s Emergency Mot. Am. Pretrial Order 2.)

The court also determined that Robinson was on notice that Virginia law could govern because, under Illinois's conflict of law analysis, this court must apply the substantive law of the state

with the "most significant relationship" to the dispute. *See Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898, 901 (Ill. 2007). Robinson ingested the Children's Motrin at issue and incurred her initial injuries in Virginia while a Virginia resident and thus was aware of Virginia's significant relationship to her claims. From the commencement of this litigation, therefore, Robinson and her counsel were on notice that Virginia law could apply to the claims Robinson asserted against the Defendants.

Despite having notice, Robinson expressly waived her breach of implied warranty claim in the parties' Final Proposed Pretrial Order without regard to whether Illinois or Virginia law governed. This representation to both Defendants and the court was not merely a "typographical error" where the plaintiff "may never have affirmatively relinquished his right to raise [the] claim," as in *In re Delagrange*, 820 F.2d 229, 232-33 (7th Cir. 1987), cited by Robinson, but instead was an express and knowing waiver of her breach of implied warranty claim.

Consequently, the court does not find that its failure to instruct the jury on Robinson's previously waived breach of implied warranty claim constitutes a manifest error of law. Robinson's motion to amend the judgment under Rule 59(e) is denied.

3.      Motion for New Trial Under Rule 59(a)

Under Federal Rule of Civil Procedure 59(a), "[a] new trial is granted if the verdict is against the manifest weight of the evidence or if a prejudicial error occurred." *Bankcard Am., Inc. v. Universal Bancard Sys.*, 203 F.3d 477, 480-81 (7th Cir. 2000).[4]

---

[4] The Seventh Circuit appears divided over the amount of deference courts must give to the jury when assessing whether a verdict is against the manifest weight of the evidence. Some judicial panel opinions indicate that the Rule 59(a) new trial standard mirrors the Rule 50 judgment as a

Robinson argues that she is entitled to a new trial for three reasons: (1) the jury's contributory negligence defense was against the great weight of the evidence; (2) the court's failure to instruct the jury on Robinson's breach of implied warranty claim was prejudicial error; and (3) the court's failure to instruct the jury that the law presumes Robinson would have read and heeded an adequate warning (i.e., the "heeding presumption") was prejudicial error.

Based on the above analysis denying Robinson's motion for judgment as a matter of law and motion to amend the judgment, the court finds that the first two arguments do not warrant a new trial. In this case, the record contains sufficient credible evidence from which the jury could reasonably conclude that Karen Robinson was contributorily negligent. Thus, the court does not find that the jury's verdict was against the manifest weight of the evidence.

Additionally, as explained in the court's previous opinion (Dkt. No. 400) and reiterated here, Robinson expressly waived her implied breach of warranty claim in the parties' Final Proposed Pre-trial Order, and the court does not believe that precluding her from presenting that claim to the jury

---

matter of law standard, instructing courts to "view the evidence in a light most favorable [to the non-movant], leaving issues of credibility and weight of the evidence to the jury." *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006) (Bauer, Rovner & Sykes, JJ.). Others, however, recognize that courts *may* weigh the evidence and make credibility determinations and need not view the evidence in the light most favorable to the non-moving party. *See Thomas v. Stalter*, 20 F.3d 298, 304 (7th Cir. 1994) (Cudahy, Ripple & Williams, JJ.) ("In deciding whether to order a new trial, [the district court] was entitled to weigh the evidence for itself. In weighing the evidence, the court may assess the witnesses' credibility.") (internal citations omitted); *Spanish Action Comm. v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985) (Eschbach, Posner & Wood, H., JJ.) ("In ruling on a motion for a new trial, unlike a J.N.O.V. [judgment notwithstanding the verdict] motion, the judge may consider the credibility of the witnesses, the weight of the evidence, and anything else which justice requires."). Wright and Miller endorse the latter approach. *See* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2806 (2d ed. 1995) ("[O]n a motion for a new trial–unlike a motion for a judgment as a matter of law–the judge may set aside the verdict even though there is substantial evidence to support it. The [trial] judge is not required to take that view of the evidence most favorable to the verdict-winner."). Without resolving this conflict, the court finds that even under the less deferential standard, a new trial is not warranted.

resulted in prejudicial error to Robinson.

Finally, Robinson's third argument, that the court's failure to instruct the jury on the heeding presumption was prejudicial error, similarly must fail. In those jurisdictions adopting the heeding presumption, the presumption typically "enables the plaintiff to make out a prima facie [case] of proximate cause without introducing any evidence in support and shifts the burden of proof to the defendant to show any adequate warning would have been ignored." 2 Frumer & Friedman, *Products Liability* § 12.04 (rev. ed. 2009). Even if the presumption applies, however, it "of course, can be rebutted." *Id.*

According to Robinson, the following instruction accurately reflects Virginia's heeding presumption:

> Where a manufacturer is obligated to give an adequate warning of danger, the giving of an inadequate warning is in legal effect no warning, and the manufacturer cannot rely on a defense that the user of its product failed to read or follow the warning on the product.

(Pl.'s Mot. 25.) The court disagrees.

First, this instruction does not even describe a heeding presumption but rather sets forth an irrebuttable and unqualified proposition that a failure to read an inadequate warning can never be a defense to a failure-to-warn claim. As discussed above, *see supra* Part 1.A.ii, Robinson has not presented any authority for such an instruction. The proposed instruction, therefore, "did not accurately recite the law, so there was no error in refusing to give it." *United States v. Rice*, 520 F.3d 811, 817 (7th Cir. 2008).

Second, assuming that this instruction accurately characterizes the heeding presumption, Robinson has not presented, nor has this court's research uncovered, any Virginia authority expressly adopting the presumption. *Spruill v. Boyle-Midway, Inc.*, 308 F.2d 79 (4th Cir. 1962), and *Sadler v.*

*Lynch*, 64 S.E.2d 664 (Va. 1951), both cited by Robinson, merely recognize that "an insufficient warning is in legal effect no warning," *Spruill*, 308 F.2d at 87; *Salder*, 64 S.E.2d at 666, without offering any discussion of a heeding presumption.

Robinson's reliance on *Stanback v. Parke, Davis & Co.*, 657 F.2d 642 (4th Cir. 1981), the only case she identifies which discusses the heeding presumption, is similarly misplaced.   In *Stanback*, the Fourth Circuit, relying on a Fifth Circuit decision applying Texas law, acknowledged in *dicta* that the plaintiff "would be entitled to the presumption that a warning, had it been given, would have been heeded." *Id.* at 646 n.5 (citing *Reyes v. Wyeth Labs.*, 498 F.2d 1264, 1281-82 (5th Cir. 1974)).   The court declines to adopt Robinson's overly broad interpretation of *Stanback* as supporting Virginia's adoption of the heeding presumption.

In the absence of Virginia Supreme or Appellate Court authority, this court was forced to predict whether Virginia's highest court would apply the heeding presumption.  *See Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092-93 (7th Cir. 1999).   In making this determination, it was cognizant that "a federal court sitting in diversity must proceed with caution in making pronouncements about state law." *Id.* at 1092.  Indeed, if this court's predictions are inaccurate,

> [u]ntil corrected by the state supreme court, [they] inevitably skew the decisions of [those] who rely on them and inequitably affect the losing federal litigant who cannot appeal the decision to the state's supreme court; they may even mislead lower state courts that may be inclined to accept federal predictions as applicable precedent.

*Id.* at 1093 (citing Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism*, 78 Va. L. Rev. 1671, 1681 (1992)) (first alteration added).  Without the authority to create state law, "a federal court must be careful to avoid the temptation to impose upon a state what it, or other jurisdictions, might consider to be wise policy." *Id.*

With these principles in mind, the court ultimately concluded that the Virginia Supreme Court

would not adopt the heeding presumption.  (*See* Trial Tr. 1161:14-22.)  The presumption is based on a section in Comment j to the Restatement (Second) of Torts § 402A.  Frumer & Friedman, *supra* § 12.04.  Virginia, however, "has not adopted § 402A of the Restatement."  *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 57 n.4 (Va. 1988).  Furthermore, consistent with this court's decision, federal courts routinely have been unwilling to apply the heeding presumption before its adoption by the state courts.  *See Wilson v. Bradlees of New. Eng., Inc.*, 250 F.3d 10, 16 (1st Cir. 2001) (recognizing that New Hampshire had not adopted heading presumption and declining to "do so on its behalf"); *Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1003 (4th Cir. 1992) ("There is no such [heeding] presumption under South Carolina law, and we are unwilling to create one here."); *Thomas v. Hoffman-La-Roche, Inc.*, 949 F.2d 806, 813 (5th Cir. 1992)  (declining to adopt heeding presumption where "[n]o Mississippi court has adopted a presumption of causation on facts similar to those in this case, and the failure of the Mississippi Supreme Court to mention such a presumption in [a similar case] strongly suggests that such a presumption does not exist under Mississippi law"); *Motus v. Pfizer, Inc.*, 196 F. Supp. 2d 984, 994-95 (C.D. Cal. 2001) ("Given that other [sic] no other court applying California law in this context has adopted the presumption, and several courts have failed to do so when the presumption could have been critical, this Court will not apply it here."); *Ramstad v. Lear Siegler Diversified Holdings Corp*, 836 F. Supp. 1511, 1516 (D. Minn. 1993) (declining to adopt "the far-reaching [heeding presumption] doctrine urged by plaintiffs" where "Minnesota courts . . . [had] not adopted such a presumption").

Finally, even if the court erred by finding that Virginia Supreme Court would not adopt the heeding presumption, any error was harmless because the presumption was undisputably rebutted by Robinson's own testimony.  The heeding presumption "disappears once the defendant comes forward

with some evidence indicating that the plaintiff would not have followed the warning." *Black v. M & W Gear Co.*, 269 F.3d 1220, 1232 (10th Cir. 2001). During cross examination, Robinson admitted that she neither read nor considered the product's warnings before taking the Children's Motrin:

> Q: Are you telling me now that you did consider the warnings on September 12, 2005?
>
> A: No, sir. I didn't read the bottle.
>
> Q: You didn't read the bottle, and you did not consider the warnings, either, did you?
>
> A: I suppose not, at that time.

(Trial Tr. 610:17-22);

> Q: But again, [on September 13, 2005,] you didn't read the warnings. We heard your testimony. You didn't read the warnings?
>
> A: No, I didn't read it again.

(*Id.* at 618:14-16.) Based on this admission, the presumption was of no further effect, and presenting Robinson's proposed instruction to the jury after her testimony rebutted the presumption would have been improper. *See Black*, 269 F.3d at 1232 (recognizing court should not have instructed jury on heeding presumption when defendant presented evidence rebutting the presumption).

Consequently, the court's failure to instruct the jury on Robinson's proposed heeding presumption theory was not prejudicial error. Her motion for a new trial therefore also is denied.

<u>CONCLUSION</u>

Based on the above, Robinson's "Renewed Motion for Judgment as a Matter of Law, Motion to Amend the Judgment, and Motion for New Trial" [424] is denied. Defendants' "Conditional Renewal of Rule 50(a) Motion for Judgment as Matter of Law Pursuant to Rule 50(b) After Trial"

[422], which it renewed in the event the court set aside the jury verdict entered in its favor is denied as moot.

ENTER:

*James F. Holderman*

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date:   November 16, 2009